## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JONATHAN A. MCINTYRE,** | **CIVIL ACTION** |
| **Plaintiff,** | |
| *v.* | **NO. 23-3508-KSM** |
| **RONALD PHILLIPS, *et al.*,** | |
| **Defendants.** | |

### MEMORANDUM

**MARSTON, J.**                                                    **November 21, 2023**

Jonathan A. McIntyre, an inmate currently incarcerated at SCI Mahanoy, has filed a *pro se* Complaint asserting civil rights violations arising from his previous confinement at Chester County Prison ("CCP").  (Doc. No. 1.)  He names CCP Warden Ronald Phillips, Deputy Warden Timothy Mulrooney, Major Morgan Taylor, and Captain Peter Sergi as defendants.  (*Id.* at 2–3.)  Plaintiff also seeks leave to proceed *in forma pauperis*.  (Doc. No. 4.)  For the following reasons, the Court will grant Plaintiff *in forma pauperis* status but dismiss the Complaint with leave to amend.

### I.      FACTUAL ALLEGATIONS[1]

The Complaint centers on allegations that Plaintiff was denied exercise opportunities while detained at CCP both before and after his conviction.

Plaintiff's allegations begin in December of 2020 when he was housed in K block as a pretrial detainee.  (Doc. No. 1 at 5.)  At that time, Plaintiff alleges that he was denied the

---

[1] The Court adopts the sequential pagination assigned to the Complaint by the CM/ECF docketing system.

opportunity to exercise in the recreation yard "for a number of days in a row" and similarly could not exercise on the block. (*Id.*) When he asked why he was being denied access to the yard, an unnamed official told him it was because there was no officer available to "work the tower." (*Id.*) Plaintiff states that this is a "standard excuse" and notes that the "yard has a double razor wire fence and cameras." (*Id.* at 5, 14.) Plaintiff requested a grievance and was told to write to the Captain. (*Id.* at 5.) When he did so, he received no response. (*Id.* at 5, 13.)

In January of 2021, Plaintiff was moved to G block and was again denied exercise privileges on "numerous occasions." (*Id.* at 13.) He wrote another letter to the Captain raising his concerns with the lack of exercise opportunities, but again received no response. (*Id.*) At an undisclosed time in 2021, Plaintiff was moved to E block. (*Id.*) He alleges that here too he was denied exercise opportunities for an indeterminate amount of time. (*Id.*)

In October of 2021, Plaintiff was moved to F block where he claims he was again denied the opportunity to exercise. (*Id.*) When he complained to a supervising officer, he was told that the issue would be addressed that day and exercise time was subsequently made available. (*Id.*) Plaintiff also began work as a barber while residing on F block. (*Id.*) But then in December of 2021 and January of 2022, the COVID-19 pandemic[2] caused the barbershop to close and all exercise and yard access to be suspended. (*Id.*) When the shop reopened four months later, exercise was only offered during the same hours that the barbershop was open, thus preventing barbers, like Plaintiff, from exercising on days that they worked. (*Id.*) Plaintiff raised his concerns to non-defendant Correctional Officer Goodman who allegedly told his superiors about the problem, but to no avail. (*Id.*) Plaintiff filed an informal grievance with Defendant Sergi,

---

[2] Although the COVID-19 pandemic first arose in March of 2020 and Plaintiff resided in CCP at least as early as December of 2020, he does not appear to allege that he was subjected to a COVID-19-related shutdown until December of 2021 and January of 2022. (*Id.*)

which he claims was initially ignored.  (*Id.*)  He then wrote a letter about the situation to a non-defendant auditor Patrick Zirpoli, who did not respond, but Plaintiff believes "called the Prison to [inform] them of [Plaintiff's] letter and inquire about the situation."  (*Id.*)  Soon thereafter, Plaintiff received a response to his grievance and the issues with "yard/exercise for the barbers was addressed."  (*Id.*)  Plaintiff alleges in a grievance attached to the Complaint that this deprivation lasted for "a year."  (*Id.* at 18.)[3]

In December of 2022, after being convicted, Plaintiff was sentenced and moved to L block, the maximum-security block of CCP.  (*Id.* at 13.)  Plaintiff asserts that he was once again denied the opportunity to exercise, which led him and a group of other inmates to request grievances.  (*Id.* at 13.)  Plaintiff's request was granted but the others' were not, which he claims "put[] a target on [his] back with the other inmates" and led to "harassment by staff."  (*Id.*)

On February 8, 2023, while Plaintiff was still residing on L block, a non-defendant correctional officer told the inmates that there would be no exercise during the 8 a.m. to 4 p.m. shift.  (*Id.* at 14.)  Plaintiff avers that this denial was "for the 4th time in a row since [he] was moved to that block."  (*Id.*)  Plaintiff asked why he was being denied yard time and was again told that there were no tower guards available.  (*Id.*)  Plaintiff raised his concerns about this denial to non-defendant Corporal Guthrie who told Plaintiff that the lack of tower guards "wasn't his problem" and that he should write to Defendant Deputy Warden Mulrooney.  (*Id.*)  Plaintiff claims that after Corporal Guthrie left, a non-defendant correctional officer mocked him, saying "it's not that bad, we let you out once every three weeks."  (*Id.*)  When Plaintiff asked that officer for his name, he allegedly gave Plaintiff a false name, taking advantage of the fact that

---

[3] The Court can consider the attachments to the Complaint in determining whether Plaintiff has stated a claim.  *See Frederick v. Se. Pa. Transp. Auth.*, 892 F. Supp. 122, 124 (E.D. Pa. 1995).

correctional officers at CCP don't wear name tags.  (*Id*.)  Plaintiff wrote to Defendants Deputy

Warden Mulrooney and Captain Sergi asserting that he had a right to a minimum of five hours of

exercise per week in an area designated for exercise.[4]  (*Id*.)  He received a response on February

10, 2023, just two days later, stating that the issue would be addressed.  (*Id*.)

A few days later, on February 13, a non-defendant correctional officer allegedly told

Plaintiff that if the inmates wrote collectively to request a grievance again, the "block would go

[in]to a 24 hour lockdown."  (*Id*.)  The block was offered exercise the next day, but Plaintiff was

allegedly told by a non-defendant correctional officer that the "rest of the prison would not be

getting mail because the mail room guard had to be pulled" to work the yard for them.  (*Id*.)

Plaintiff speculates that this was not true, but that if it was and the information spread among

inmates and guards, "it could have posed a threat to all the inmates on 'L' block."  (*Id*.)  The next

day, Plaintiff and other inmates again wrote to Defendant Sergi requesting grievances and

making him aware of how the guards treated the situation.  (*Id*.)  Defendant Sergi claims that he

never received this request.  (*Id*.)

The inmates on L block received exercise on February 20, supervised by a non-defendant

correctional officer.  (*Id*.)  This officer allegedly told Plaintiff that he had not worked on L block

---

[4] Plaintiff alleges that he cited to "Section 11-6-3" of the "Constitutional Rights of Prison's" in this letter. (Doc. No. 1 at 14.)  It is unclear if this is a citation to a regulation, a section in a prisoner's handbook, or some other source.  To the extent Plaintiff seeks to assert a claim based on the content of his prisoner's handbook, "[a]s many courts have held, corrections officials cannot be held liable for constitutional claims for failing to conform to procedures outlined in inmate handbooks and other internal prison procedures."  *Bowman v. Wetzel*, No. 20-135, 2020 WL 3258946, at *6 (W.D. Pa. June 16, 2020) (collecting cases); *see also Curry v. McCann*, No. 18-5444, 2019 WL 77441, at *7 n.7 (E.D. Pa. Jan. 2, 2019) ("[A] prison's departure from the policies and procedures outlined in the facility's handbook does not, in and of itself, amount to a constitutional violation under § 1983.").  To the extent Plaintiff's citation is to a regulation, a mere violation of a state law, assuming any such violation occurred here, does not on its own amount to a constitutional violation.  *See Wyatt v. Dep't of Prob. & Parole*, No. 19-5460, 2020 WL 2307351, at *7 (E.D. Pa. May 8, 2020) ("[E]ven if this Court were to assume that the statute at issue was violated, a violation of state law generally does not equate to a federal constitutional violation.").

recently because the inmates on the block were "a bunch of snitches." (*Id*.) Plaintiff asserts that this exchange was overheard by inmates from an adjacent block, compromising the safety of L block inmates. (*Id*.) He wrote to Defendant Major Taylor about this incident and was given a grievance form. (*Id*.) He then submitted a grievance to Defendants Captain Sergi and Warden Phillips. In this grievance, Plaintiff detailed the facts outlined above regarding his time on L block and alleged that during the nearly three years he was at CCP, he was denied exercise "over 300 times," only fifty of which were "due to weather or legitimate governmental objective." (*Id.* at 18–19.) His grievance was denied by Captain Sergi and his subsequent appeal was not answered. (*Id*. at 14, 16–24.)

After being moved out of CCP, Plaintiff filed this lawsuit, naming Warden Phillips, Deputy Warden Mulrooney, Major Taylor, and Captain Sergi as defendants. He claims that these individuals are liable because they are "charged with executing orders from a Judge denying or granting freedom to citizens of the United States." (*Id*. at 4.) He alleges that the denial of exercise caused his legs to atrophy to the point he can no longer run and exacerbated his post-traumatic stress disorder. (*Id*. at 5.) He seeks money damages in the amount of $1,000 per day that he was denied exercise, resulting in an aggregate demand of $250,000, as well as an additional $250,000 for pain and suffering. (*Id.*) He also seeks injunctive relief mandating the prison "change it's [sic] grievance policy and exercise programming/yard availability." (*Id*.)

## II.   STANDARD OF REVIEW

As an initial matter, the Court grants Plaintiff leave to proceed *in forma pauperis*. (Doc. No. 4.) Pursuant to 28 U.S.C. § 1915(a), federal courts may authorize the commencement of a civil action, "without prepayment of fees or security," by a plaintiff "who submits an affidavit that includes a statement of all the assets [he] possesses," showing that he is "unable to pay" the

costs of the lawsuit.  28 U.S.C. § 1915(a)(1); *see also Chain v. Gross*, Civil Action No. 18-4610, 2018 WL 5631642, at *1 (E.D. Pa. Oct. 31, 2018) ("§ 1915(a) allows a litigant to commence a civil or criminal action in federal court *in forma pauperis* by filing in good faith an affidavit stating, among other things, that he is unable to pay the costs of the lawsuit.") (quotation marks and citations omitted).  If, upon "review [of] the affiant's financial statement," the court is "convinced that [the plaintiff] is unable to pay the court costs and filing fees, the court will grant leave to proceed *in forma pauperis*."  *Chain*, 2018 WL 5631642, at *2 (quotation marks and citation omitted).

Here, after reviewing Plaintiff's IFP application and corresponding documents (Doc. Nos. 4–5), it appears that he is unable to pay the costs of bringing this lawsuit.  The Court will therefore grant him leave to proceed *in forma pauperis*.[5]

Because we have granted Plaintiff's leave to proceed *in forma pauperis*, we are statutorily mandated by 28 U.S.C. § 1915 to conduct a preliminary review (i.e., screening) of this action.  *See, e.g.*, *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) ("[I]t is proper for district courts to dismiss facially inadequate complaints *sua sponte* under . . . § 1915(e)(2)(B)."); *Smith v. Shop Rite*, Civil Action No. 3:17-cv-0907, 2018 WL 2424136, at *2 (M.D. Pa. May 9, 2018) ("This Court has a statutory obligation to conduct a preliminary review of *pro se* complaints brought by litigants given leave to proceed *in forma pauperis*.").  Under 28 U.S.C. § 1915(e)(2)(B)(ii), the Court must dismiss the Complaint if it fails to state a claim.  This analysis is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *Muchler v. Greenwald*, 624 F. App'x 794, 797 (3d Cir. 2015).  Thus,

---

[5] Because Plaintiff is a prisoner, he must still pay the $350 filing fee in installments as required by the Prison Litigation Reform Act.  28 U.S.C. § 1915(b).

the Court is required to determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "At this early stage of the litigation, [the Court will] accept the facts alleged in [the *pro se*] complaint as true, draw all reasonable inferences in [Plaintiff's] favor, and ask only whether [the] complaint, liberally construed, contains facts sufficient to state a plausible claim.'" *Shorter*, 12 F.4th at 374 (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015) (quotation marks and alterations omitted)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Plaintiff is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).

## III.   DISCUSSION

Plaintiff asserts that Defendants violated his constitutional rights. The vehicle by which constitutional claims may be pursued in federal court against state officials is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Section 1983 claims are brought against state officials in either their individual or official capacities.[6] *Miller v. Goggin*, No. CV 22-3329-KSM, 2023 WL 3294832, at *7 (E.D. Pa. May 5,

---

[6] In drafting his Complaint, Plaintiff checked the box indicating that he named all Defendants in their official capacities only. (Doc. No. 1 at 2–3.) Plaintiff appears not to have understood the implication of checking that box. Claims against municipal employees named in their official capacity are indistinguishable from claims against the governmental entity that employs them. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n.55 (1978)); *id.* ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). To state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation. *See Monell*, 436 U.S. at 694; *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003). Because Plaintiff does not attempt to allege an official capacity claim, the Court will liberally construe the Complaint to assert a claim against Defendants in their individual capacities. *See Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) ("To determine whether a plaintiff sued state officials in their

2023).  However, to bring forth an individual capacity claim, a plaintiff must allege facts demonstrating that each defendant was personally involved and played an "affirmative part" in the alleged constitutional violation.  *Id.* at *10; *see also Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) ("[A] defendant in a civil rights action must have personal involvement in the alleged wrongs.").  Personal involvement can be demonstrated through "allegations of personal direction or of actual knowledge and acquiescence."  *Evancho*, 423 F.3d at 353.  However, allegations of participation or of actual knowledge and acquiescence "must be made with appropriate particularity," *Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir. 1988), meaning the Complaint must allege the particulars of the "conduct, time, place, and persons responsible," *Evancho*, 423 F.3d at 353.

"When evaluating a claim brought under § 1983, we must first identify the exact contours of the underlying right said to have been violated in order to determine whether [Plaintiff] has alleged a deprivation of a constitutional right at all."  *Natale*, 318 F.3d at 581 (quotation marks and alterations omitted).  Here, a liberal reading of the Complaint reveals that Plaintiff alleges violations of his First Amendment rights through the retaliatory acts he endured after filing his grievances, his Eighth Amendment rights through the denial of exercise opportunities as a post-conviction prisoner and the harassment he faced from prison staff, and his Fourteenth Amendment rights in connection with CCP's treatment of his grievances and the denial of exercise time as a pretrial detainee.  The Court will address each in turn, beginning with the

---

official capacity, we first look to the complaints and the course of proceedings.") (quotation marks omitted); *Coward v. City of Philadelphia*, No. 21-1619, 2021 WL 4169422, at *3 (E.D. Pa. Sept. 13, 2021) (permitting claim against defendant in his individual capacity to proceed even though "[plaintiff] did not check the box indicating a desire to sue [that defendant] in his individual capacity" where the allegations clearly sought relief based on the defendant's conduct).

issues regarding his grievances.[7]  But because Plaintiff has not pled sufficient facts demonstrating that any of his constitutional rights have been violated, the Court will dismiss the Complaint in its entirety with leave to file an amended complaint.

### A.    Grievances

Throughout the Complaint, Plaintiff makes allegations concerning the grievance process at CCP.  (*See, e.g.*, Doc. No. 1 at 13–14 (alleging that the letters and requests for grievances that he submitted to the Captain were ignored); *id.* at 14 (alleging that his grievance was improperly denied); *id*. at 17 (alleging that it was common for requests for grievances to not be received by the Captain)).  Liberally construing the Complaint, as the Court must, it appears that Plaintiff intends to bring forth a procedural due process claim under the Fourteenth Amendment.  However, such a claim is not cognizable.  To state a claim under the Fourteenth Amendment Due Process clause, Plaintiff must allege that he has a constitutionally protected liberty or property interest at stake.  *See Fantauzzi*, 2019 WL 4543095, at *5 ("Where an inmate has no protected interest relating to his claim, there cannot be deprivation of due process requiring constitutional redress.").  But it is well established that "[p]rison inmates do not have a constitutionally protected right to a grievance process."  *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (per curiam); *see also Anderson v. Pennsylvania*, 196 F. App'x 115, 117 (3d Cir. 2006) ("[I]n order to state a due process claim, [Plaintiff] needed to show the deprivation of a constitutionally-protected liberty or property interest in a procedurally deficient manner, and he failed to do so.  [Plaintiff] does not have a liberty interest protected by the due process clause in

---

[7] The Complaint references Plaintiff's "5th Amendment Right to 'Due Process.'"  (Doc. No. 1 at 3.) However, the Fifth Amendment is "inapplicable to state officials," like Defendants. *Walker v. Brittain*, No. 1:22-CV-00965, 2022 WL 4454525, at *3 (M.D. Pa. Sept. 23, 2022).  Therefore, the Court will again liberally construe Plaintiff's claim as arising under the Fourteenth Amendment Due Process Clause, which is applicable to state officials.

the inmate grievance procedures.") (citations omitted).  Thus, "any allegations of improprieties in the handling of his grievance" do not raise constitutional concerns and do "not state a cognizable claim under § 1983."[8]  *Williams v. Armstrong*, 566 F. App'x 106, 109 (3d Cir. 2014); *see also Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (per curiam) ("[B]ecause a prisoner has no free-standing constitutional right to an effective grievance process, [a prisoner] cannot maintain a constitutional claim . . . based upon his perception that [the defendant] ignored and/or failed to properly investigate his grievances." (citation omitted)).

Since this issue cannot be redressed through more articulate pleading, the Court will dismiss Plaintiff's claim regarding the handling of his grievances with prejudice.  *Caterbone v. Lancaster Cnty. Prison*, No. 19-CV-2052, 2019 WL 2774162, at *3 (E.D. Pa. July 2, 2019), *aff'd*, 811 F. App'x 721 (3d Cir. 2020) (dismissing claim regarding prison grievance system with prejudice at the screening stage); *Easton v. Penchishen*, No. 21-CV-5464, 2022 WL 407640, at *2 (E.D. Pa. Feb. 10, 2022) (same).

## B.     Denial of Exercise

The crux of the Complaint is that Plaintiff was unconstitutionally denied exercise while detained at CCP.  Because Plaintiff's claims implicate the conditions of his detention both pretrial and post-conviction, the Court must apply two distinct standards: the Fourteenth Amendment Due Process Clause to his time as a pretrial detainee and the Eighth Amendment to his time as a convicted prisoner.  *See Hubbard v. Taylor*, 399 F.3d 150, 164–67 (3d Cir. 2005) (outlining that the Eighth Amendment governs challenges to non-medical conditions of confinement claims for convicted inmates whereas the Fourteenth Amendment governs such

---

[8] If anything, Defendants' failure to respond to Plaintiff's request for grievances would "simply allow him to overcome an affirmative defense of non-exhaustion."  *See Allah v. Thomas*, 679 F. App'x 216, 219 (3d Cir. 2017).  But it does not independently "give rise to a constitutional claim." *Id.*

challenges for those who are detained pre-trial); *Dahlan v. Dep't of Homeland Sec.*, 215 F.

App'x 97, 100 n.2 (3d Cir. 2007) (noting that the Third Circuit has "cautioned that an Eighth

Amendment analysis is not applicable to a pretrial detainee's claims that conditions of

confinement violate his constitutional rights; rather, the analysis should be whether the

conditions amounted to 'punishment' and therefore violated the detainee's Due Process rights").

The Court addresses each in turn.

### 1.   Fourteenth Amendment Due Process

First, Plaintiff's allegation that he was deprived of exercise opportunities as a pre-trial

detainee implicates the Fourteenth Amendment Due Process Clause.  Whereas the Eighth

Amendment protects convicted prisoners from "cruel and unusual punishment," under the

Fourteenth Amendment, subjecting pre-trial detainees to any punishment is an unconstitutional

deprivation of their liberty.  *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ("In evaluating the

constitutionality of conditions or restrictions of pretrial detention that implicate only the

protection against deprivation of liberty without due process of law, we think that the proper

inquiry is whether those conditions amount to punishment of the detainee."); *Hope v. Warden*

*York Cnty. Prison*, 972 F.3d 310, 325 (3d Cir. 2020) (noting that "detainees may not be punished

before they are adjudicated guilty").  In other words, through the Fourteenth Amendment,

"pretrial detainees are entitled to greater constitutional protection than that provided by the

Eighth Amendment." *Hubbard*, 399 F.3d at 167 n.23; *cf. Hope*, 972 F.3d at 325 ("[T]he

substantive due process guarantees afforded detainees like Petitioners are *at least as robust* as

Eighth Amendment protections afforded prisoners.") (emphasis added).  Unconstitutional

punishment under the Fourteenth Amendment "typically includes both objective and subjective

components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007).  "[T]he objective component

requires an inquiry into whether the deprivation was sufficiently serious." *Id.* The subjective component, on the other hand, asks whether the officials acted with a "sufficiently culpable state of mind." *Id.* This "state of mind" can be demonstrated through an "express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose." *Id.* (outlining that the Supreme Court in *Bell* did not abandon the objective and subjective analysis and instead, "allowed for an inference of mens rea where the restriction is arbitrary or purposeless, or where the restriction is excessive, even if it would accomplish a legitimate governmental objective"). In determining whether a restriction or condition is related to a government interest, the Supreme Court has warned that these "considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Bell*, 441 U.S. at 540 n.23. The Court must also keep in mind that "practical considerations of detention justify limitations on 'many privileges and rights'" and that a detainee "simply does not possess the full range of freedoms of an unincarcerated individual." *Hope*, 972 F.3d at 326 (quoting *Bell*, 441 U.S. at 545–46).

Here, the Court finds that Plaintiff has failed to state a plausible claim under the Fourteenth Amendment. Nearly all the allegations in the Complaint are far too general for the Court to conclude that the deprivations Plaintiff endured were "sufficiently serious" to meet the objective component of an unconstitutional punishment. *Carroll*, 495 F.3d at 68. Plaintiff alleges that he was denied exercise for "a number of days in a row" while on K block, "on numerous occasions" while on G and E block, and on the days he worked as a barber while on F

block.[9]  (Doc. No. 1 at 5, 13.)  The only thing that can be gleaned from these allegations is that,

over the course of the two years that he was a pre-trial detainee at CCP, Plaintiff was at times

denied exercise, sometimes for multiple days in a row.  But the denial of exercise for pretrial

detainees, even for consecutive days, is not *per se* constitutionally infirm.  *See, e.g.*, *Hughston v.

McGee*, No. 23-CV-1898, 2023 WL 5618937, at *3 (E.D. Pa. Aug. 29, 2023) ("[D]enial of

recreation time for short periods does not constitute the type of serious deprivation that amounts

to objective punishment [under the Fourteenth Amendment].");  *Concepcion v. Russell*, No. 21-

CV-1060, 2021 WL 2529816, at *6 (E.D. Pa. June 21, 2021) (holding that Plaintiff who was

denied showers and exercise for three days failed to state claim under the Fourteenth

Amendment).  Thus, without more information as to how long these deprivations lasted, how

often they occurred, and whether Plaintiff was denied all exercise or just yard time,[10] these

allegations fail to state a claim under the Fourteenth Amendment.  *See, e.g.*, *Abdullah v. Carney*,

No. 19-CV-5988, 2020 WL 3265143, at *3 (E.D. Pa. June 17, 2020) (dismissing complaint

where it failed to provide "details about when and how frequently [Plaintiff] was denied the

ability to exercise outdoors");  *Chapolini v. City of Philadelphia*, No. CV 22-284, 2022 WL

815444, at *12–13 (E.D. Pa. Mar. 17, 2022) (holding that Plaintiff had "not alleged sufficient

facts about the duration of [the] conditions such that the court could conclude that they were

---

[9] In a grievance attached to the Complaint, Plaintiff mentions in passing that he was denied exercise for "a year" while residing on F block.  (Doc. No. 1 at 18).  But this allegation also fails to state a claim.  First, it is unclear if Plaintiff is alleging that he was denied exercise continuously for a year or if these deprivations occurred sporadically over the course of a year.  Second, even assuming Plaintiff meant that he was literally denied exercise every day for a year, this would include time in which all prison services were suspended due to the COVID-19 pandemic, which as discussed below, was a constitutionally permissible limitation on his right to exercise.  *See infra* at 14–15.

[10] Plaintiff alleges that he was denied exercise both on the yard *and* on the block while he resided in K block.  (Doc. No. 1 at 5.)  However, he makes no such allegation in connection with the denial of exercise while on G, E, and F blocks.

13

objectively serious" where he alleged that he endured "countless" lockdowns); *cf. Coates v. Sobina*, No. CA 10-174, 2011 WL 2680391, at *4 (W.D. Pa. June 17, 2011), report and recommendation adopted, No. 1:10-CV-174-SJM-SPB, 2011 WL 2672124 (W.D. Pa. July 8, 2011) (finding Plaintiff's allegations that "on certain days . . . his work hours have prevented him from attending morning and afternoon yard sessions" insufficient to state a claim under the Eighth Amendment).

The only specific allegation in the Complaint regarding Plaintiff's time as a pretrial detainee is his assertion that exercise was not available in December of 2021 and January of 2022 due to the COVID-19 pandemic. (Doc. No. 1 at 13.) Even if denial of exercise for two consecutive months is "sufficiently serious" to meet the objective component of an unconstitutional punishment under the Fourteenth Amendment, this allegation does not state a plausible cause of action because it fails under the subjective component. As discussed, the subjective component examines whether Defendants had a "sufficiently culpable mental state." *Carroll*, 495 F.3d at 68. In the absence of an express intent to punish, "[t]he ultimate question is whether conditions are reasonably related to a legitimate governmental objective." *Hope*, 972 F.3d at 326 (quotation marks and citations omitted); *see also Bell*, 441 U.S. at 538 ("[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'"). The deference typically given to prison officials when making this determination is "especially strong" in light of the "unprecedented situation" presented by the COVID-19 pandemic. *Chapolini*, 2022 WL 815444, at *12 (quoting *Hope*, 972 F.3d at 327).

Here, the Court finds that the denial of Plaintiff's exercise in December of 2021 and January of 2022 was reasonably related to the prison's interests in safety and security. In light of

the anomalous health crisis presented by the COVID-19 pandemic, Defendants were faced with the difficult task of protecting the prisoners, their employees, and the public at large from the continued spread of the virus, while maintaining the security and orderly functioning of the prison.  The limited denial of services like exercise and yard time, where prisoners are likely to come into contact with one another, was a reasonable, non-excessive step in the furtherance of that interest.  Indeed, courts have consistently held that even more severe and encompassing restrictions on prisoners were reasonable in light of the prison officials' legitimate goal of controlling the spread of COVID-19.  *See, e.g.*, *Hope*, 972 F.3d at 327–39 (concluding that conditions of confinement during COVID-19 did not amount to unconstitutional punishment); *McClain v. United States*, No. 21-4997 (SDW), 2021 WL 48206292021 WL 4820629, at *3 (D.N.J. Oct. 15, 2021) (dismissing without prejudice a conditions-of-confinement claim by pretrial detainee because "restrictions confining prisoners to their cells for the majority of their days and denying in person family visits during COVID-19-related lockdowns" were "rationally related to a legitimate purpose – controlling the threat of COVID-19"); *cf. Bell*, 441 U.S. at 540 (noting that the government "has legitimate interests that stem from its need to manage the facility" and that "the Government must be able to take steps to maintain security and order at the institution").  Since the withholding of Plaintiff's exercise during the COVID-19 pandemic was done for the legitimate purpose of controlling the threat of the virus as opposed to punishing Plaintiff, these allegations fail to state a claim under the Fourteenth Amendment.[11]

---

[11] While the Court need not reach this issue given the discussion above about Plaintiff's failure to satisfy the objective component, Plaintiff's allegations regarding the denial of exercise as a pretrial detainee may also fail to meet the subjective component of an unconstitutional punishment.  Regarding the denial of exercise while he resided on K block, Plaintiff alleges that personnel informed him that yard access was not offered because "there was no officer available to work the tower."  (*Id.* at 5.)  Plaintiff deems this a "standard excuse" and argues that there were cameras and double razor wire fencing.  (*Id.* at 5, 14.)  But in light of the deference due to prison officials' expertise, the Court finds that this limited denial of exercise is reasonably related to the prison's legitimate interest in promoting the security of the facility

Because Plaintiff has failed to allege sufficient facts demonstrating that he was subjected to unconstitutional punishment as a pretrial detainee, the Court will dismiss Plaintiff's claim under the Fourteenth Amendment. But because the predominant issue with this claim is a lack of specificity, the Court will dismiss without prejudice and permit Plaintiff to file an amended complaint as to this claim.

### 2. Eighth Amendment

Plaintiff's allegations regarding his time at CCP after he was sentenced and moved to L block implicate the Eighth Amendment's prohibition on "cruel and unusual punishments." U.S. Const. amend. VIII. As discussed above, the Third Circuit has indicated that the constitutional protections afforded convicted prisoners are not as robust as those provided to pretrial detainees under the Fourteenth Amendment. *Hubbard*, 399 F.3d at 167 n.23. Nevertheless, like the Fourteenth Amendment framework, whether a punishment runs afoul of the Eighth Amendment turns on both objective and subjective components. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 226 (3d Cir. 2015). As for the objective component, the prisoner must demonstrate that "the prison official deprived the prisoner of the minimal civilized measure of life's necessities." *Id.* Subjectively, the prisoner must show that "the prison official acted with deliberate indifference" to the prisoner's "health or safety," meaning that they "defendant

---

and the safety of those granted yard access. Similarly, regarding the scheduling conflicts between Plaintiff's shifts at the barbershop and yard time while he resided on F block, the prison officials' management of the day-to-day operations of their facility is a legitimate interest and their determination of how to balance yard time with prisoners' work schedules is also entitled to deference. *See Bell*, 441 U.S. at 540 (noting that the government "has legitimate interests that stem from its need to manage the facility"). Further, the fact that the issue with the barbers was eventually addressed, (Doc. No. 1 at 13), counsels against a finding that Defendants intended to punish Plaintiff through this scheduling conflict. And finally, as for his time on E and G block, Plaintiff does not allege what justification, if any, he was given by prison officials for the denial of yard access. This prevents the Court from finding that the subjective component could plausibly be met here. *See Chapolini*, 2022 WL 815444, at *12 (finding that the complaint lacked sufficient details from which the court could "assess the objective and subjective components of the alleged punishment" where Plaintiff had "not alleged any facts about the defendants' stated reasons for imposing the lockdowns, except generally that they were in response to COVID-19").

intentionally sought to cause the inmate harm" or "acted or failed to act despite having knowledge that [their] actions or inaction, as the case may be, would subject the inmate to a substantial risk of serious harm." *Id.* at 226–27.  In determining whether the prison official acted with deliberate indifference, the Court also considers whether they had a "'legitimate penological purpose' behind their conduct." *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 446 (3d Cir. 2020) (quoting *Ricks v. Shover*, 891 F.3d 468, 475 (3d Cir. 2018)); *Platt v. Brockenborough*, 476 F. Supp. 2d 467, 472 (E.D. Pa. 2007) (noting that even the "near-total deprivation of the opportunity to exercise" will not violate the Eighth Amendment where the "restriction relates to a legitimate penological purpose").

The Court finds that Plaintiff has not pled sufficient facts to meet either component of an unconstitutional punishment under the Eighth Amendment.  Turning first to the objective component, because "meaningful recreation is 'extremely important to the psychological and physical well-being of the inmates,'" *Peterkin v. Jeffes*, 855 F.2d 1021, 1031 (3d Cir. 1988), a "near-total deprivation of the opportunity to exercise may violate the Eighth Amendment," *Platt*, 476 F. Supp. 2d at 472.  However, withholding exercise for short periods of time is "insufficiently serious to implicate the Eighth Amendment."  *Gattis v. Phelps*, 344 F. App'x 801, 805 (3d Cir. 2009) ("Even minimal provision of time for exercise and recreation may satisfy constitutional requirements").   Here, Plaintiff's allegation that on February 8, 2023, he was denied exercise for the fourth day in a row is the exact type of short deprivation that Courts have routinely held fails to state an objective punishment under the Eighth Amendment.  *See, e.g.*, *id.* (holding that limiting exercise to three days per week and refusing to guarantee outdoor exercise did not implicate the Eighth Amendment); *Fortune v. Hamberger*, 379 F. App'x 116, 122 (3d Cir. 2010) (holding that denial of adequate exercise for a period of fifteen days was not

"sufficiently serious" to implicate the Eighth Amendment).  Outside of this allegation, Plaintiff

makes only generalized claims that he was "denied exercise" while on L block without

identifying when these deprivations occurred or how long they lasted.  These vague allegations

fail to state a claim for the same reasons set forth above.  *See supra* at 12–14.  And while

Plaintiff has alleged a physical injury in the form of muscle atrophy, (Doc. No. 1 at 5)[12] without

additional facts suggesting that he was denied exercise for a more substantial period of time, the

Court cannot infer that Plaintiff he was deprived of the "minimal civilized measure of life's

necessities."  *See Castro v. Chesney*, No. 97–4983, 1998 WL 767467, at *12 (E.D. Pa. Nov. 3,

1998) ("Deprivation of exercise can rise to the level of a constitutional violation when it occurs

for a prolonged period of time *and* the plaintiff can demonstrate a tangible physical harm which

resulted from the denial of exercise.") (emphasis added).[13]

---

[12] Plaintiff has presented no documented evidence of his injuries and instead has attached an in-depth *psychiatric* evaluation that *predates* the allegations in the Complaint.  (Doc. No. 1 at 27–37.)  A physical or post-deprivation evaluation detailing the impact that being denied exercise has had on Plaintiff's health may lend more support to his allegations of injury.

[13] Plaintiff alleges in a grievance attached to the Complaint that over the course of the almost three years he spent at CCP both as a pre-trial detainee and convicted prisoner, he was denied "yard 300 times," and only "[f]ifty were due to weather or legitimate governmental objective."  (Doc. No. 1 at 18; *see also id.* at 5 ("I have asked for $1,000.00 per day that I was illegally denied exercise, totaling $250,000.00)).  But this allegation fails to state a claim for a panoply of reasons.  First, it is not clear how Plaintiff arrived at this number and the Court cannot credit his conclusory statement that only fifty were due to a "legitimate governmental objective."  *See Iqbal*, 556 U.S. at 678, 681 (providing that the court need not consider conclusory allegations).  As one example, it appears that Plaintiff includes in his 250-day calculation the months in which the prison was locked down due to COVID-19, which, as described above, was a constitutional limitation on his right to exercise.  Second, this allegation still leaves the Court to guess as to when, why, and how consecutive these deprivations were, as well as how many of these deprivations took place when he was a pretrial detainee as opposed to a convicted prisoner.  These facts are critical for the Court's determination of whether Plaintiff endured an unconstitutional punishment.  Third, as currently pled these 250 days of no access to the yard or exercise over the course of almost three years would average out to Plaintiff being improperly denied exercise and or yard roughly one out of every three days that he was at CCP.  Such a denial of exercise does not constitute an unconstitutional punishment.  *See, e.g.*, *Gattis*, 344 Fed. App'x at 805 (holding that the limitation of exercise to three days per week was insufficiently serious to implicate the Eighth Amendment); *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir.1992) (holding that forty-five minutes of exercise per week was not constitutionally infirm); *Carroll v. Delaware County*, No. CV 22-1720, 2023 WL 2868020, at *16 (E.D. Pa. Apr. 10, 2023) (finding Plaintiff had not sufficiently pled that his lack of access to the gym amounted to

As for the subjective component, Plaintiff has not alleged any facts suggesting that Defendants named herein (to the extent they were involved at all) acted with the requisite deliberate indifference.  Instead, the allegations in the Complaint demonstrate that when Plaintiff raised concerns about his lack of exercise opportunities on L block, the Defendants responded shortly thereafter and eventually resolved the issue.  Plaintiff first alleges that when he was moved to L block, he was denied exercise for an indeterminate amount of time, leading him and a group of his fellow prisoners to request grievances.  (*Id.* at 14.)  But as Plaintiff acknowledges, his request for grievances was granted.  (*Id.*)  Then on February 8, 2023, after Plaintiff was denied yard access for the fourth consecutive day, he requested another grievance.  (*Id.*)  Plaintiff received a response just two days later stating that these issues would be addressed, and his block was subsequently allowed yard time.  (*Id.* at 14.)  This is confirmed by the response to Plaintiff's later grievance that is attached to the Complaint in which Defendant Captain Sergi writes that "[w]hen this issue first came to light, this Captain immediately addressed the situation at an administrative level" and with "the exception of exigent circumstances, all yards are being offered and all reasonable attempts are being made" to give inmates exercise time.  (*Id.* at 21.)  Thus, it cannot be said that Defendants knew of a "substantial risk of serious harm" to Plaintiff and failed to act.  *Chavarriaga*, 806 F.3d at 226.  Instead, upon learning of Plaintiff's concerns regarding the denial of exercise time for L block prisoners, Defendants provided Plaintiff exactly what he asked for: yard time.  Since Defendants responded to Plaintiff's concerns, they cannot plausibly be found to have acted with deliberate indifference, even if Plaintiff eventually endured a physical injury.  *See Farmer v. Brennan*, 511 U.S. 825, 844 (1994) ("[P]rison officials who

---

punishment under the Fourteenth Amendment where he claimed he was denied "space, equipment, and time to exercise for thirteen months and counting").

actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.").

It also appears that the denial of Plaintiff's exercise time on L block was for a "legitimate penological purpose." *Porter*, 974 F.3d at 441.  On February 8, 2023, when Plaintiff asked why he was being denied exercise for the fourth day in row, the officer responded that "a tower guard was not available."  (Doc. No. 1 at 14.)  While Plaintiff deems this a "standard excuse" and elsewhere claims that the yard has "double razor wire fence and cameras" (*id* at 5, 14), the officer's response outlines a clear and legitimate penological purpose for denying yard time: promoting the security of the prison and ensuring the safety of those provided access to the yard. This further belies any suggestion that Defendants acted with a deliberate indifference toward Plaintiff's health or safety.

Because Plaintiff's allegations fail to demonstrate that he suffered a "sufficiently serious" deprivation or that Defendants acted with the requisite state of mind, the Court will dismiss his Eighth Amendment claim.  However, since one of the reasons for dismissal is the lack of specificity in the Complaint, the Court will again dismiss this claim without prejudice and allow Plaintiff to reassert this claim in an amended complaint.

C.     **Harassment and Retaliation**

Plaintiff also appears to bring claims for First Amendment retaliation and harassment, presumably under the Eighth Amendment.  In support of these claims, Plaintiff alleges the following:  1) when he and other inmates requested grievances, some unnamed individual granted only his request, thus putting a target on his back among both inmates and staff; 2) a non-defendant correctional officer mocked him about his inability to exercise; 3) a non-defendant correctional officer stated that Plaintiff's block would go into a lockdown if they filed

group complaints again; 4) a non-defendant correctional officer told Plaintiff that the rest of the prison would not be getting mail because the mail room guard had been assigned to the exercise yard, leading Plaintiff to speculate that if the information spread among inmates, it could have posed a threat to the inmates on his block; and 5) a non-defendant correctional officer told Plaintiff that the inmates on L block were "snitches" which Plaintiff claims was overheard by inmates from an adjacent block, compromising the safety of L block inmates.  (Doc. No. 1 at 13–14.)  However, these allegations fail to state a claim both because Defendants did not have any personal involvement in these retaliatory acts and because Plaintiff did not endure an "adverse action" sufficient to deter a person of ordinary firmness from filing grievances.  The Court addresses each issue in turn.

### 1.  Lack of Personal Involvement

First, Plaintiff has failed to state a plausible harassment or retaliation claim because none of the alleged retaliatory actions are attributable to the named Defendants.  As discussed above, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs." *Rode*, 845 F.2d at 1207.  "Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Rode*, 845 F.2d at 1207).  In other words, Plaintiff must bring forth allegations demonstrating how each Defendant played an "affirmative part" in the alleged constitutional deprivation.  *Miller*, 2023 WL 3294832, at *10.  Furthermore, while liability under § 1983 cannot be predicated on a *respondeat superior* basis and state actors typically "are liable only for their own unconstitutional conduct," there are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014).  First, a supervisor may be liable if he or she

"with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, 'a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced' in the subordinate's unconstitutional conduct." *Id.* However, generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (per curiam).

Here, Plaintiff has failed to demonstrate that any of the Defendants had personal involvement in the alleged retaliatory acts. As the above description makes clear, all of the alleged retaliatory statements were made by non-defendant correctional officers, not the named Defendants. At most, the Court can infer that Defendants were involved in reviewing grievances and letters that Plaintiff filed related to these statements. (*See* Doc. No. 1 at 14 (outlining that Plaintiff wrote to Defendants Mulrooney and Sergi about the non-defendant correctional officer mocking the denial of his exercise opportunities); *id.* (outlining that Plaintiff wrote to Defendant Sergi about a correctional officer's comment that the other inmates wouldn't receive mail); *id.* (describing how Plaintiff wrote to Defendant Taylor about his experiences on L block and then subsequently filed a grievance with Defendants Sergi and Phillips about the same)). But it is well established that after-the-fact review of a letter or grievance does not demonstrate the required personal involvement for a claim under § 1983. *See, e.g.*, *Iwanicki v. Pa. Dep't of Corr.*, 582 F. App'x 75, 79 n.4 (3d Cir. 2014) (per curiam) ("[M]ere notification of a grievance does not allege sufficient personal involvement because it does not establish that the Defendants

personally directed or acquiesced in the retaliation."); *Rode*, 845 F.2d at 1208 (finding allegation that defendant "had personal knowledge of [the plaintiff's] harassment as a result of grievances she filed with his office of administration . . . "simply insufficient to show that [defendant] had actual knowledge of" the alleged constitutional violation); *Mincy v. Chmielsewski*, 508 F. App'x 99, 104 (3d Cir. 2013) ("[T]he District Court is correct that an officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement.").  Thus, these allegations fail to demonstrate that Defendants were personally involved in any retaliatory acts.

The only allegation that could potentially represent "affirmative conduct" on the part of the named Defendants is Plaintiff's assertion that his request for grievances regarding denial of yard time was granted while other inmates' requests were denied, which put a target on his back with other inmates and led to harassment from staff members.  (Doc. No. 1 at 13.)  What differentiates this from his other allegations regarding review of his grievances is that Plaintiff appears to be asserting that it was the granting of his request itself that constituted retaliation.  But allegations of personal involvement must be made with "appropriate particularity," *Rode*, 845 F.2d at 1207, and here the Complaint does not make clear what role each Defendant had in the grievance process.  Without any allegations as to Defendants' actual involvement in granting his request while denying the others, they cannot be said to have been personally involved.

Moreover, to the extent that Plaintiff seeks to hold Defendants liable because they hold supervisory positions at CCP, he has likewise failed to state a plausible claim.  Plaintiff has simply failed to allege that there was any policy, created by Defendants or otherwise, that directly caused him to suffer a constitutional harm.  And as discussed above, while Defendants may have known about this retaliatory conduct *after the fact* through Plaintiff's grievances and

letters, this fails to demonstrate acquiescence or personal involvement.  *See Iwanicki*, 582 F.

App'x at 79 n.4; *Croom v. Wagner*, No. 06-1431, 2006 WL 2619794, at *4 (E.D. Pa. Sept. 11,

2006) (holding that "neither the filing of a grievance nor an appeal" of a grievance is "sufficient

to impose knowledge of any wrongdoing").

Since the retaliatory acts that Plaintiff alleges are only attributable to non-defendant

correctional officers,[14] he has failed to state a claim for either harassment or First Amendment

retaliation against any named Defendant.

### 2.   Failure to State a Claim for Harassment or Retaliation on the Merits

Even if the Complaint contained facts demonstrating personal involvement on the part of

Defendants, these claims otherwise fail on the merits.  As an initial matter, it is well established

that verbal harassment is not on its own actionable under § 1983.  *See, e.g.*, *Mimms v.*

*U.N.I.C.O.R.*, 386 F. App'x 32, 35 (3d Cir. 2010) ("[T]he District Court correctly concluded that

[Plaintiff's] claim regarding the defendants' alleged verbal abuse and harassment of him was not

viable under 42 U.S.C. § 1983.  Verbal harassment of a prisoner, without more, does not violate

the Eighth Amendment."); *Smith v. Mun. of Lycoming Cnty.*, 335 F. App'x 147, 150 (3d Cir.

2009) ("Mere verbal harassment or abuse . . . is not a civil rights violation." (citation omitted));

---

[14] The Court recognizes the difficulty that Plaintiff may face in naming the perpetrating correctional officers as defendants given that officers at CCP allegedly do not wear name tags.  (*See* Doc. No. 1 at 14 ("Since staff do not regularly wear name tags identification of officers is nearly impossible when they violate prison policy.")).  However, in situations such as this, courts permit plaintiffs to plead "John Doe" and/or "Jane Doe" as defendants until they have had an opportunity to conduct discovery and determine their identities.  *See, e.g.*, *Ayres v. Berks Cnty. Sheriff's Dep't*, No. CIV.A. 09-1512, 2010 WL 816336, at *1 (E.D. Pa. Mar. 9, 2010) (explaining that "[f]ederal district courts permit the use of Doe defendants for pleading purposes until plaintiffs can determine the unknown actors' identities" but noting that "if it appears that reasonable steps are not taken to learn the identity of the true party and add him as a defendant, claims against unknown defendants should be dismissed with prejudice"); *Fargione v. Sweeney*, No. CV 16-5878, 2018 WL 3533704, at *3 (E.D. Pa. July 23, 2018) (noting the same); *Walker v. Cumberland Cnty. Jail Med. Dep't*, No. CIV 09-0036 (RBK), 2009 WL 2413619, at *1 (D.N.J. Aug. 3, 2009) ("If Plaintiff does not know the exact identity of the proper defendants who were personally involved in the alleged violations against him, he may plead 'John Doe' and/or 'Jane Doe' as defendants.").

*Sears v. McCoy*, 815 F. App'x 668, 670 (3d Cir. 2020) (holding that dismissal at screening of Plaintiff's verbal harassment claim was proper and noting that "[a] prisoner's allegations of verbal harassment, unaccompanied by another injury, are not cognizable under § 1983"); *Concepcion*, 2021 WL 2529816, at *6 (dismissing claim for harassment at screening and noting that "mocking and verbal harassment of a prisoner simply do not give rise to an independent constitutional violation"). Thus, if Plaintiff's allegations are true the Court condemns this conduct which was unprofessional. But these comments do not raise constitutional concerns and are not actionable under § 1983 because Plaintiff failed to plead that there was some act reinforcing the correctional officers' statements.

Next, the Court turns to Plaintiff's First Amendment retaliation claim. To state a claim for First Amendment retaliation, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) there exists "a causal link between the exercise of his constitutional rights and the adverse action taken against him." *See Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). Here, Plaintiff has satisfied the first factor because the filing of a grievance by a prisoner is constitutionally protected conduct. *See id.* at 530 (noting that filing grievances against an officer "implicates conduct protected by the First Amendment"); *Burgos v. Canino*, 358 F. App'x 302, 306 (3d Cir. 2009) (holding that plaintiff "engaged in constitutionally protected activity when he filed his grievances"). However, Plaintiff's claim fails at the second step. Nearly all of Plaintiff's allegations pertain to harassing or threatening statements that correctional officers made after he filed his grievances and letters. (Doc. No. 1 at 13–14.) Specifically, Plaintiff alleges that correctional officers threatened to put his block in lockdown, called his block "snitches," mocked him for being denied exercise, and made a

comment about the rest of the prison not receiving mail because the guards were pulled to work the yard.  (Doc. No. 1 at 13–14.)  But again, Courts have consistently held that verbal harassment or unfulfilled threats do not constitute adverse actions for purposes of First Amendment retaliation.  *See, e.g.*, *Burgos v. Canino*, 641 F. Supp. 2d 443, 454 (E.D. Pa.), *aff'd*, 358 F. App'x 302 (3d Cir. 2009) ("[A]ny use of words, including threatening or offensive language, does not constitute retaliatory action."); *Revell v. City of Jersey City*, 394 F. App'x 903, 906 (3d Cir. 2010) ("The retaliatory conduct that [Plaintiff] alleges is insufficient as a matter of law 'to deter a person of ordinary firmness from exercising [his] First Amendment rights.'  Courts have declined to find adverse action where the 'alleged retaliatory acts were criticism, false accusations or verbal reprimands.'").  While Plaintiff hypothesizes that a few of these comments could have resulted in negative actions being taken against him by other prisoners or staff (Doc. No. 1 at 14), he makes no allegations that any such action materialized.  Thus, the Court finds that these threats and harassing comments would not deter a person of ordinary firmness from filing grievances and cannot support a First Amendment retaliation claim.

Further, to the extent Plaintiff alleges that he was retaliated against by Defendants granting his request for grievances and not the other inmates' requests, he has likewise failed to demonstrate that "an adverse action" was taken against him.  The Court fails to see how *granting* the relief requested by Plaintiff would deter a person of ordinary firmness from filing grievances in the future.

Since verbal harassment does not by itself raise constitutional concerns and Plaintiff has failed to adequately plead that he suffered an "adverse action" because he filed grievances, the Court will dismiss his harassment and First Amendment retaliation claim.  However, because

Plaintiff could conceivably bolster these allegations with additional facts regarding actions taken against him, the Court will dismiss without prejudice and with leave to amend.

## IV. CONCLUSION

Because none of Plaintiff's claims against the named Defendants are plausible, the Complaint must be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii).  An appropriate Order will be entered providing additional instructions for filing an amended complaint.